## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1044

**RONDA MAXWELL HUDSON**

**VERSUS**

**CLINT TUCKER STROTHER**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 242,908
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders and Van H. Kyzar, Judges.

**AFFIRMED.**

Susan Ford Fiser
P. O. Box 12424
Alexandria, LA 71315-2424
(318) 442-8899
COUNSEL FOR DEFENDANT/APPELLANT:
    Clint Tucker Strother

Darrell Keith Hickman
P. O. Box 48
Alexandria, LA 71309-0048
(318) 448-6353
COUNSEL FOR PLAINTIFF/APPELLEE:
    Ronda Maxwell Hudson

**KYZAR, Judge.**

Appellant, Clint Tucker Strother, appeals the judgment of the trial court denying his rule for a change of custody of the parties' minor daughter. For the reasons set forth herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mr. Strother and Appellee, Ronda Maxwell Hudson, are the unmarried parents of Kristen Marie Strother, born on June 16, 2010. By judgment rendered on November 10, 2011, based upon the stipulations of the parties, and signed on January 10, 2012, the parties agreed to share joint custody of Kristen, with Ms. Hudson being designated as the primary custodial parent and with Mr. Strother having reasonable visitation rights. The parties entered into another Consent Judgment on June 30, 2014, wherein Mr. Strother was awarded every-other-weekend custodial visitation and alternating weekly summer custodial visitation.

Subsequently, Mr. Strother filed a Rule for Change of Custody, Rule for Contempt and For Other Relief on June 2, 2017, based on numerous allegations, including that the child had excessive tardiness and unexcused absences from school, that Child Protection had telephoned him, and that the mother, Ronda Hudson, had been involved in physical violence with the man with whom she is living while the minor child was in the home. In this pleading, he also sought and obtained a Temporary Ex Parte Custody Order, whereby Ms. Hudson was given only supervised visitation at her mother's home until the matter could be heard.

On July 24, 2017, a hearing was held; at the conclusion of which the trial court denied the Rule for Change of Custody, holding that "the Court finds that there is insufficient evidence to take the child away from the mother and place it with the father at this point." This appeal by Mr. Strother followed.

On appeal, Mr. Strother alleges four assignments of error, as follows:

1

1.    The trial court committed legal error by applying an incorrect legal standard to determine custody and visitation rights to the minor child, and thus a *de novo* review by this court is appropriate and necessary.

2.    The trial court was manifestly erroneous in failing to recognize that the evidence presented established that sole or domiciliary custody for the father and supervised visitation for the mother would be in the best interest of the child and in failing to tailor a custody and visitation order in a manner that would minimize risk of harm to the minor child.

3.    The trial court erred in failing to find that the violent acts against mother by her paramour in front of the child triggered the Post-Separation Family Violence Relief Act.

4.    The trial court erred in failing to recognize that the [Appellee's] failure to call her paramour to testify or to explain his failure to testify about matters material to the case and peculiarly within his knowledge created an adverse presumption that his testimony would be damaging and unfavorable to her case.

## OPINION

### *Legal Standard Applied by the Trial Court for Change of Custody*

Mr. Strother first asserts that the trial court erred in applying the incorrect standard of law in denying his rule for a change in the custody arrangements of the parties' minor child. As such, he argues, this court should review the trial court's decision de novo. The standard of review by this court in cases involving child custody issues is well settled.

> An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993). This is especially applicable in a child custody dispute wherein appellate courts accord substantial deference to the trial judge's conclusions. "The trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse." *Deason v. Deason*, 99-1811, p. 2 (La.App. 3 Cir. 4/5/00), 759 So.2d 219, 220 (citing *State in the Interest of Sylvester*, 525 So.2d 604, 608 (La.App. 3 Cir. 1988) (citing *Bagents v. Bagents*, 419 So.2d 460 (La.1982))).
>
> Every child custody case must be viewed within its own peculiar set of facts, and a trial court's award of custody is entitled to great weight and will not be overturned on appeal unless an abuse of

discretion is clearly shown. *Connelly v. Connelly*, 94-527 (La.App. 1 Cir. 10/7/94), 644 So.2d 789. Both the Louisiana Legislature and the Louisiana Supreme Court have made it abundantly clear that the primary consideration and prevailing inquiry is whether the custody arrangement is in the best interest of the child. *See Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731.

*Guidry v. Guidry*, 07-1272, pp. 2-3 (La.App. 3 Cir. 3/5/08), 979 So.2d 603, 605.

"However, if a court of appeal finds that a reversible error of law or manifest error of material fact was made in the lower court, the [appellate] court, whenever possible, is required to review the facts de novo from the entire record and render a judgment on the merits." *Jenkins v. Rougeau*, 97-257, pp. 3-4 (La.App. 3 Cir. 10/8/97), 702 So.2d 841, 843, *writ denied*, 97-2849 (La. 1/30/98), 709 So.2d 715 (citing *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742).

Mr. Strother asserts that the trial court applied the wrong legal standard as to his burden of proof at trial in ruling against his request for a change in custody. He claims that the trial court held him to the stricter standard of proof that is required for a change of custody from a considered decree. The burden of proof rule in change-of-child-custody cases has been previously stated:

> When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

*Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La.1986) (referencing *Bankston v. Bankston*, 355 So.2d 58 (La.App. 2 Cir. 1978) and *Languirand v. Languirand*, 350 So.2d 973 (La. App. 2 Cir. 1977)).

However, as noted by Mr. Strother, the custody decree from June 30, 2014 that he sought to change was not a considered decree but was, in fact, a consent decree.

3

Where, as here, the underlying custody decree is a stipulated or consent judgment, rather than a considered decree, the party seeking modification of the decree must prove that (1) there has been a material change of circumstances since the custody decree was entered, and (2) the proposed modification is in the best interest of [the] child. *Hensgens v. Hensgens*, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478. The party is not required to prove under *Bergeron* that continuation of the present custody arrangement is so deleterious to the child as to justify modification or that the harm likely to be caused by a change of environment is substantially outweighed by the advantages to the child. *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So.2d 731.

*Guidry*, 979 So.2d at 606 (footnote omitted).

Mr. Strother states in brief that "it is clear that an incorrect legal standard was applied by the trial court," while also admitting in that same brief that "[i]t is unclear, exactly, what legal standard the trial court applied" in its decision to deny his request to modify custody. He cites no authority for his argument that it held him to the stricter standard. To attempt to establish his claim that the trial court applied the heavier burden of proof required by *Bergeron*, Mr. Strother points to language used by the trial court in its oral ruling on July 24, 2017. First, he notes the trial court's statement that "even with all the allegations of drug use being thrown about, there have been no drug charges ever filed against the mother." We do not find that this language supports Mr. Strother's argument. It is clear that the trial court found that the allegations of a change in circumstances based on alleged drug use were not proven, especially given the evidence of Ms. Hudson's clean urine screen, and thus, did not support a finding of a change of circumstances for the purposes of child custody. Showing a change in circumstances is still a prerequisite for amending child custody even when set by a consent judgment. *Guidry*, 979 So.2d 603.

Further, even Mr. Strother admits in brief that the language used by the trial court established that it "did not find it in the child's best interest to change the

4

domiciliary status". Nevertheless, he continued to cite language from the trial court's oral ruling, particularly language concerning the child's schooling and Ms. Hudson's employment situation, to attempt to support his contention. While the trial court did note specific concerns it had in regard to Ms. Hudson's parenting style, it also specifically addressed Mr. Strother, stating:

> Mr. Strother, I'm - I understand your concerns and your concerns are legitimate. At the same time, I - I want to advise you that - that the child may be better off with you at this time, but guess what, it's not sufficient to take the child away from the mother. All right.

The trial court explicitly found that the evidence produced did not support proof of a change in circumstances, nor was it proof that a change in custody was in the child's best interest at this time. A trial court's decision is afforded substantial deference and will not be disturbed on review absent a clear showing of abuse as the trial court is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses. *Deason v. Deason*, 99-1811 (La.App. 3 Cir. 4/5/00), 759 So.2d 219. We do not find that the language used by the trial court in denying the request for a change in custody supports Mr. Strother's claim that it utilized the wrong standard of proof required of him. As he has cited no factual or legal authority in support of the allegations, we find no merit therein. *See Poiencot v. Lafayette Consol. Gov't*, 16-1009 (La.App. 3 Cir. 5/31/17), 222 So.3d 733.

*Manifest Error Argument*

Mr. Strother next asserts that the trial court committed manifest error in failing to find that it was in the best interest of the child to grant him sole custody of the child and setting supervised visitation rights for Ms. Hudson. "The primary consideration in a determination of child custody is the best interest of the child. This applies not only in actions setting custody initially, but also in actions to

5

change custody." *Mulkey v. Mulkey*, 12-2709, pp. 9-10 (La. 5/7/13), 118 So.3d 357, 364 (footnotes omitted).

> In manifest error review, it is important that the appellate court not substitute its opinion when it is the [trial] court who is in the unique position to see and hear the witnesses as they testify. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record.

*In re A.J.F.*, 00-948, p. 26 (La. 6/30/00), 764 So.2d 47, 62.

In brief, Mr. Strother contends that the trial court did not consider any of the best-interest factors listed in La.Civ.Code art. 134 when denying his request for domiciliary custody of the minor child. However, the evidence in the record does not support such a statement. The trial court heard the testimony of multiple witnesses, including both parties, all of whom testified to factors pertinent to determining the best interest of the child. After a full day of hearing witness testimony and arguments of counsel, the trial court stated:

> The Court notes that . . . the mother needs to seek employment so she's not dependent upon anyone else to take care of the child. The Court also notes that support for the child has not been forthcoming by Mr. Strother but has been provided for by the mother. The Court is concerned about the child's education in that there is no reason for the tardiness and/or absences by the mother. But with that said, the Court finds that there is insufficient evidence to take the child away from the mother and place it with the father at this point. So the child will remain with mother as the domiciliary parent[.]

The best interest of the child standard in a child custody case is a fact intensive inquiry that requires the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented. *Gary v. LeBlanc*, 16-1054 (La.App. 3 Cir. 6/7/17), 222 So.3d 784. The trial court is not required to make a mechanical evaluation of all of the factors enumerated in La.Civ.Code art. 134 in determining what is in a child's best interest for custody purposes, nor is it bound to give more weight to one factor over another; the

6

relative weight of each factor is left to the discretion of the trial court. *Galland v. Galland*, 14-343 (La.App. 3 Cir. 11/26/14) 152 So.3d 1090, *writ denied*, 15-319 (La. 4/17/15), 168 So.3d 404.

It is clear from the trial court's oral reasons that it considered many factors when denying Mr. Strother's request to modify custody. A trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion. *Gremillion v. Gremillion*, 07-492 (La.App. 3 Cir. 10/3/07), 966 So.2d 1228. "Every child custody case must be viewed based on its own particular facts and relationships involved, with the goal of determining what is in the best interest of the child." *Mulkey*, 118 So.3d at 367. Based on a thorough review of the record, we cannot say that the trial court was manifestly erroneous in determining that it was not in the best interest of the child to modify custody at this time.

## *Application of the Post-Separation Family Violence Relief Act*

In his third assignment of error, Mr. Strother asserts that the trial court erred by failing to apply the Post-Separation Family Violence Relief Act to the current case based upon allegations of violent acts committed against Ms. Hudson by her live-in paramour. Mr. Strother claims that the parties' daughter witnessed the supposed violence and that the trial court's failure to apply the terms of the act is reversible error.

> The Post-Separation Family Violence Relief Act is found in La.R.S. 9:361, *et seq.* "From a review of the Act as well as the case law, the apparent legislative intent in creating the Act was to protect victimized parties when domestic disputes arise in the course of separation and divorce." *State ex rel. S.D.K.*, 04-218, p. 5 (La.App. 5 Cir. 5/26/04), 875 So.2d 887, 890-91. Louisiana Revised Statutes 9:364(C) "was specifically designed to protect the child's interest by restricting the right of visitation of the abusing spouse in families with a history of family violence." *Michelli v. Michelli*, 93-2128, p. 5 (La.App. 1 Cir. 1/5/95), 655 So.2d 1342, 1346. Louisiana Revised Statutes 9:364 provides in pertinent part:

7

A. There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence. The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined in R.S. 9:362, is not abusing alcohol and the illegal use of drugs scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent's participation as a custodial parent because of the other parent's absence, mental illness, or substance abuse, or such other circumstances which affect the best interest of the child or children. The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.

. . . .

C. If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent, conditioned upon that parent's participation in and completion of a treatment program. Unsupervised visitation shall be allowed only if it is shown by a preponderance of the evidence that the violent parent has completed a treatment program, is not abusing alcohol and psychoactive drugs, and poses no danger to the child, and that such visitation is in the child's best interest.

*Slayton v. Slayton*, 05-1529, pp. 3-4 (La.App. 3 Cir. 5/3/06), 929 So.2d 865, 868-69.

Family Violence is defined by La.R.S. 9:362 (emphasis added), which states in pertinent part: "(4) 'Family violence' includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, **committed by one parent against the other parent or against any of the children**."

In the instant case, Mr. Strother is not asserting that Ms. Hudson has committed violent acts against him or their daughter Kristen. Rather, he contends

8

that Ms. Hudson's boyfriend has been physically abusive to Ms. Hudson. He further asserts that Ms. Hudson, merely by remaining in her boyfriend's home, has "subjected her child to domestic violence on more than one occasion[.]" There are no allegations that Ms. Hudson's paramour committed physical violence against Kristen. "Application of the Act is mandatory when there has been one serious injury, resulting from abuse, or simply more than one act of violence during the marriage." *Hicks v. Hicks*, 98-1527, p. 5 (La.App. 3 Cir. 5/19/99), 733 So.2d 1261, 1264.

There is no jurisprudence to support Mr. Strother's assertion that Ms. Hudson is an abusive parent subject to the application of the Post-Separation Family Violence Relief Act based on the aforementioned facts. Further, Mr. Strother's allegations of domestic violence committed against Ms. Hudson were contradicted by Ms. Hudson herself. Though Ms. Hudson's mother testified that she had seen Ms. Hudson with bruises on her arms, no one could testify as to actually witnessing abusive behavior by Ms. Hudson's boyfriend. In fact, Ms. Hudson's mother testified that Ms. Hudson bruised easily, and the bruises on her arm could have been caused by her arm being grabbed too hard.

Additionally, Mr. Strother could only point to one specific incident, in which Ms. Hudson got into an argument with her boyfriend resulting in her and the minor child leaving the house and eventually being forced to spend the night at the Rapides Parish Sheriff's Office in 2016. Again, the only evidence of violence or abuse was some bruising found on Ms. Hudson's upper arm. She did not seek any help or medical care. Mr. Strother puts forth no other corroborating evidence nor does he cite any other time or incident of violence other than blanket statements that Ms. Hudson's boyfriend is abusive, which was denied by Ms. Hudson.

9

The provisions of the Post-Separation Family Violence Relief Act create a presumption against granting custody to any parent who is perpetuating family violence. La.R.S. 9:364. "The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence." La.R.S. 9:364(A). In the instant matter, only one incident of family violence is even alleged, committed against and not by Ms. Hudson, which resulted in bruising to Ms. Hudson's arms, requiring no medical attention and involving no serious bodily injury. Ms. Hudson testified that she and her boyfriend merely yelled at each other and that the bruises came from his grabbing and throwing her on the bed. Mr. Strother offered no contradictory evidence. We find no error in the trial court's failure to apply the provisions of the Post-Separation Family Violence Relief Act based on the facts presented at trial. *See Hollingsworth v. Semerad*, 35,264 (La.App. 2 Cir. 10/31/01), 799 So.2d 658.

We also note that there is no indication in the record that Mr. Strother raised the argument for the application of the Post-Separation Family Violence Relief Act with the trial court. Appellate courts generally will not consider issues that were not addressed by the trial court and which are raised for the first time on appeal. Uniform Rules – Courts of Appeal, Rule 1-3; *Allen v. Affordable Home Furnishings*, 13-176 (La.App. 3 Cir. 11/13/13), 130 So.3d 345.

## Adverse Presumption Evidentiary Rule

In his final assignment of error, Mr. Strother asserts that the trial court erred in not applying the adverse presumption rule. He argues that Ms. Hudson's paramour should have testified at trial and an adverse presumption that his testimony would be damaging and unfavorable to her case attaches because Ms. Hudson did not call him to testify.

10

The "uncalled witness" rule has been defined as an adverse presumption that arises when "a party has the power to produce witnesses whose testimony would elucidate the transaction or occurrence" and fails to call such witnesses. 19 Frank L. Maraist, *Louisiana Civil Law Treatise: Evidence and Proof*, § 4.3 (1999). A party's failure to call such witnesses gives rise to the presumption that "the witnesses' testimony would be unfavorable to him." *Id.* Although the advent of modern, liberal discovery rules has been recognized to limit this rule, it "remains viable." *Id.* Indeed, this court has recognized this rule applies when, as in this case, witnesses with peculiar knowledge of material facts pertinent to the case are not called. *Stewart v. Great Atlantic and Pacific Tea Co.*, 657 So.2d 1327, 1330 (La.App. 4 Cir.1995); *Gurley v. Schwegmann Supermarkets, Inc.*, 617 So.2d 41, 44 (La.App. 4th Cir.1993). We have also noted that "[t]he court may consider this presumption as it would any other relevant evidence in the case." *Id.*

*Taylor v. Entergy Corp.*, 01-805, pp. 14-15 (La.App. 4 Cir. 4/17/02), 816 So.2d 933, 941 (alteration in original).

While it is true that Ms. Hudson did not call her boyfriend to testify at trial, we do not find this simple fact enough to warrant the application of the adverse presumption rule. There is no evidence that Ms. Hudson's boyfriend had information "peculiarly within his knowledge" about matters material to the case which would require his testimony; any matters concerning Ms. Hudson's home life with Kristen had already been testified to by Ms. Hudson and her parents. "The admission of cumulative evidence is at the trial court's discretion." *Mitchell v. Limoges*, 05-832, p. 3 (La.App. 3 Cir. 3/1/06), 923 So.2d 906, 908, *writ denied*, 06-723 (La. 6/16/06), 929 So.2d 1285.

Further, Mr. Strother has offered no explanation as to why he himself did not call Ms. Hudson's paramour to testify. "The adverse presumption is inapplicable when the witness is equally available to both parties." *In re Succession of Barattini*, 11-752, p. 9 (La.App. 5 Cir. 3/27/12), 91 So.3d 1091, 1096 (citing *Dixon v. Travelers Ins. Co.*, 02-1364 (La.App. 4 Cir. 4/2/03), 842 So.2d 478, *writ denied*, 03-1482 (La. 9/26/03), 854 So.2d 366). There has been no showing or allegation

11

that Ms. Hudson's paramour was in any way unavailable to Mr. Strother as a witness. Accordingly, we find no merit to this assignment of error.

## DISPOSITION

Based on the foregoing, we affirm the judgment of the trial court maintaining domiciliary custody of the minor child with Ronda Hudson subject to visitation with Clint Strother. All costs of this proceeding are assessed against Mr. Strother.

**AFFIRMED.**